KIRKLIN *v.* ATLAS SAVINGS & LOAN ASSOCIATION.

107  313
f110 616

107  313
e121 515

1. If upon the trial of title to land it appears that two persons owning distinct tracts agreed to exchange them and gave bonds for titles the one to the other, and it further appears that after the delivery of the bonds for titles one conveyed his land by deed to a third person to secure the payment of money borrowed, and there was an agreement between the owner of this land and the holder of the bond for titles thereto, whereby the latter consented that the former should borrow money upon the land and convey the same to the third person as security, such an agreement is a waiver of the equity of the holder of the bond for titles in favor of the third person.

:2. Where the charter of a building and loan association authorizes it to issue instalment stock and also stock wholly or partly prepaid, and no preference is given to the holder of the prepaid stock over other classes, such a system does not contravene the law of building and loan associations as to mutuality; and loans made to a stockholder on the instalment plan, who pays interest at the legal rate and also premiums, dues, and fines, are not infected with usury because one class of stock is paid for in advance and the other by instalments.

:3. There was evidence sufficient to authorize the finding that the borrower was a member of the association; the charge of the court fully and fairly covered the material issues involved; and the verdict was supported by the evidence.

Argued March 23, — Decided April 21, 1899.

Ejectment.   Before Judge Gober.   Catoosa superior court. February 23, 1898.

*W. E. Mann* and *R. J. & J. McCamy*, for plaintiff in error.
*I. E. Shumate* and *T. C. Lattimore*, contra.

SIMMONS, C. J.   From the record it appears that Cook owned a tract of land in Georgia, situated near Chattanooga, Tenn., and that Kirklin owned a tract in Tennessee known as the "St. Elmo tract."   Davis was a real-estate broker in Chattanooga, and brought these parties together; whereupon they entered into a contract by which they agreed to exchange these tracts, one for the other.   Kirklin, for some reason, could not make Cook a title at the time the exchange was agreed upon, but had to apply to the chancery court and obtain a decree for this purpose.   On account of Kirklin's inability to make a present title, he and Cook made and executed to each other bonds for titles.   Cook wished to borrow money, and constituted Davis his agent to procure the loan for him.   It was

claimed by the plaintiff in the court below that Cook and Kirklin entered into what the witnesses called "an escrow contract," wherein they agreed that Cook should borrow money on the faith of his land in Georgia and make the lender a deed to this land, and then, after Kirklin obtained a decree so as to be able to make Cook a title to the "St. Elmo tract," the deed on the Georgia land was to be canceled and a deed to the Tennessee land given in lieu thereof by Cook. This was disputed by Kirklin, who testified that no such contract was ever made by him. His wife, who claimed to have been present at the time the contract was alleged to have been made, also testified that there was no such contract made at that time. Other persons testified in behalf of the plaintiff that there was such a contract, one of the witnesses testifying that he wrote it. The Atlas Savings & Loan Association was a corporation organized under the laws of Tennessee as a building and loan association, and once each month it put up for competitive bidding the money it had on hand. On May 27, 1893, certain money was put up, and $1,600 was knocked off to Cook. Cook was not present at the bidding, nor does the record affirmatively show who made the bid for him. The books of the association show that the money was charged to him, and that his name was subscribed as a member of the corporation, no date, however, appearing as to when his name was subscribed. On June 1, after this bidding for the money and the signing of Cook's name in the list of members, the bonds for titles between Cook and Kirklin were executed, and on this day, it is claimed, the "escrow contract" was entered into. On June 3, Cook made and executed a power of attorney to Davis, authorizing him to borrow money and to convey his land as security therefor; and on that day Davis executed a deed of Cook's title to the Georgia land to a trustee for the association. Cook defaulted in the payment of the interest on the loan and of his dues to the association. The trustee was notified, and, under a power in the deed, put up and exposed for sale in the city of Chattanooga the Georgia tract. It was purchased by the association, whose charter gave it this power. Shortly after the exchange of the bonds for titles and before the execution of the deed

from Davis, as attorney, to the trustee, Kirklin went to the Georgia land and was put in possession by Cook, who told the tenants that Kirklin was in possession and that they must thereafter attorn to Kirklin. The latter remained on the land about three hours, when he returned to Tennessee. About a month thereafter he moved from Tennessee to this land, and was in possession when the sale above described was had. The record does not show that Cook ever made a deed to the Georgia land to Kirklin, who was holding possession under the bond' for titles. After the purchase of the land by the association at the trustee's sale, Kirklin refused to deliver possession to the association; whereupon it brought an action of ejectment against him to obtain possession of the land. Kirklin's defense was, in addition to the plea of not guilty, that the trustee received the deed from Cook or his agent with notice that Kirklin held the land under bond for titles, that he took with constructive notice of Kirklin's equity, by reason of the latter's possession of June 3d, and therefore that he held subject to Kirklin's equity. He further claimed that the deed to the trustee was infected with usury and therefore void. He claimed it was usurious, because when the money was bid off at the sale Cook was not a member of the association, and the dues and premiums which he agreed to pay, in addition to the six per cent. interest, made more than the legal rate of interest. He further insisted that the plaintiff was not a regular building and loan association, because it issued stock to borrowers to be paid for on the instalment plan and likewise issued stock to members who prepaid a part or the whole of their stock in advance, thereby destroying, so he claimed, the mutuality between the different classes of stockholders. On the trial of the case the jury returned a verdict for the plaintiff. Kirklin made a motion for a new trial, which was overruled by the court. Kirklin excepted.

1. The same questions that were made and insisted on under the defendant's pleas at the trial in the lower court were insisted on in the argument of the case here. Counsel for the plaintiff in error strenuously insisted that the court had committed error in his charge, and that the jury had found con-

trary to law and evidence upon the question of notice. He insisted that the trustee, when he took the deed from Cook, had actual and constructive notice of Kirklin's equity. In the view we take of the case, it is unnecessary to discuss this point. If Cook and Kirklin entered into the " escrow contract" mentioned above, we think it did not matter whether the grantee in the deed had notice of Kirklin's possession or not. While the evidence was conflicting upon the question as to whether such contract was ever in fact made, there was in our judgment sufficient evidence to authorize the jury to find that such a contract had been executed. They so found, the trial judge was satisfied with their verdict, and we will treat their finding as correct. Kirklin, therefore, may be said to have entered into such a contract, and Cook had the right to convey the land to the lender for the purpose of securing the loan. When he did so, Kirklin, having by his contract consented, waived any equity which his bond for titles and his possession thereunder gave him, as against the lender. Such a contract must have been made with reference to that particular thing. If the association or the trustee had notice of Kirklin's possession, it is reasonable to presume that they required Kirklin's consent before advancing the money to Cook. The charges complained of in the motion for new trial upon the question of notice, and the refusals to give requested charges upon this question, even if erroneous, did not hurt Kirklin, and we therefore do not pass upon them.

2. Did the fact that the association issued to one person stock payable in instalments and to another prepaid or paid-up stock, no preference being given either over the other, contravene the law of building and loan associations and make the contract between the association and its members that of a mere creditor and debtor, and render such contract, more than the lawful rate being charged, obnoxious to the laws against usury? In other words, did the issuance of these different kinds of stock take the association out from under the laws of building and loan associations and make it simply a money-lender? We have carefully examined this question, and find that by the act of the legislature of Tennessee, ap-

proved March 17, 1893, this company was fully authorized to "issue instalment stock, to be paid for in periodical sums, and prepaid and paid-up stock, upon which a gross sum shall be paid in advance in cash, as may be prescribed by the by-laws, and cash dividends may be paid on the said stock, authorized to be issued, out of the net earnings, as the by-laws may prescribe, provided such dividends shall not exceed the per cent. of profits earned." Acts of Tenn., 1893, ch. 12. This was the law at the time the loan was made to Cook. The act was subsequently repealed, May 6, 1895. Acts Tenn., 1895, ch. 114. Thus it will be seen that the association had full power and authority to issue the paid-up and prepaid stock, and that there was no preference or advantage given to such stock over instalment stock. Both classes of stockholders were paid the same dividends upon the amount of stock held by them, and the dividends were paid out of the profits made by the association. It is difficult to understand how this could change the scheme of a regular building and loan association so as to destroy its mutuality. One person may prefer to pay for his stock in instalments, may indeed be unable to pay more than the monthly dues, premiums, etc., while another may prefer and be able to pay up the whole or a part of the amount of his stock in advance. In the one case, the association gets the money in instalments and lends it out for the best interests of the stockholders. In the other, it gets all in advance and lends it out in the same manner. Both classes of stockholders stand upon the same footing in their relations to the association and to each other. We are sustained in this view by courts of very high authority and by the text-writers who have written upon the subject. See Endlich, Bldg. Ass'ns (2d ed.), § 461 et seq.; Thompson, Bldg. Ass'ns (2d ed.), §§ 128–130, 132. The cases cited in these works we have examined, and find that they sustain the views expressed in the texts. In the latter work (§128), in a summary of the results of the decisions, we find the proposition that "in the absence of statutory prohibition, the association may receive payments to the extent of the full face value of the stock, and pay reasonable cash dividends thereon out of the earnings of the association." We conclude that the issuance of the dif-

ferent classes of stock did not change the scheme of the association so as to make the agreement to pay premiums, dues, etc., in addition to the interest, a violation of the laws against usury. We think that the deed to the trustee was not void on account of usury because of the fact that these different kinds of stock were issued.

3. It was next insisted that Cook was not a member of the association at the time he bid off the loan, and that his loan was therefore usurious. We think there is sufficient evidence in the record to have authorized the jury to find that he was a member at the time. Davis was his agent to procure the loan, and it was he, doubtless, who attended the bidding and procured the loan for Cook and signed Cook's name to the list of members. It is true his written power of attorney was not signed by Cook until several days after the bidding, but, for the purpose of making the bid and signing Cook's name to the list of members, no written authority was necessary. If authorized in parol, he had the right to bid off the money in Cook's name and sign Cook's name to the list of members. Whether Davis or some one else did this, Cook obtained the money thus procured, and thereby ratified what had been done in procuring it. This ratification related back to the act done by the agent in making the bid and signing Cook's name.

These being the controlling questions, we deem it unnecessary to discuss other questions made in the motion for new trial. The evidence warranted the verdict, and there was no error in refusing a new trial.

*Judgment affirmed.*   *All the Justices concurring.*